# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MARY R. SEILER,

    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A., *et al*.,

    Defendants.

Case No. 2:10-CV-01405-KJD-RJJ

**ORDER**

    Before the Court are Plaintiff Mary R. Seiler's Motion to Amend/Correct Complaint (#40), Motion to Amend Complaint (#47), and Motion for Leave to File Third Amended Complaint (#63). No opposition was filed to the first two of these Motions. JPMorgan Chase Bank, N.A. and California Reconveyance Company (collectively, "Defendants") filed an opposition (#65) to Plaintiff's Motion for Leave to File Third Amended Complaint, and Plaintiff filed a reply (#67).

    Also before the Court is Defendants' Motion for Summary Judgment (#68). Plaintiff filed an opposition (#70) and Defendants filed a reply (#73).

I. Background

Plaintiff, who is a law school graduate, is representing herself *pro se*. Plaintiff and her then-husband, Fred Bartholomew, sought to purchase a home at 1476 Rancho Navarro Street, Henderson, Nevada (the "Property") in January, 2004. The Grant, Bargain, Sale Deed conveyed the Property to Bartholomew as "married man as his sole and separate property."[1] Bartholomew obtained a loan from Washington Mutual for $340,200. Plaintiff contributed $40,000 of her separate property funds for the down payment on the Property. Plaintiff also executed a Grant, Bargain, Sale Deed in Bartholomew's favor, as "a married man as his sole and separate property" in January, 2004. On July 2, 2004, Bartholomew and Plaintiff recorded a Quitclaim Deed signed by Bartholomew in favor of Bartholomew and Plaintiff "as husband and wife, as community property with rights of survivorship."

On April 6, 2006 Plaintiff recorded a Quitclaim Deed conveying all ownership interest in the Property back to Bartholomew "as separate property." Shortly thereafter, on April 24, 2006, Bartholomew refinanced his loan in the amount of $370,000 (the "Loan") and executed an adjustable rate promissory note (the "Note") in favor of Washington Mutual. In connection with the Note and Loan, Plaintiff signed a Grant, Bargain, Sale Deed recorded on May 4, 2006. To Secure the Note Bartholomew signed a Deed of Trust in favor of Washington Mutual, again "as a married man and as his sole and separate property" (the "Deed of Trust"). In May, 2006 Bartholomew obtained a home equity loan for $52,950 and signed an agreement with Washington Mutual (the "Home Equity Note"). To secure the Home Equity Note, Bartholomew and Plaintiff signed a deed of trust ("Home Equity Deed of Trust") on June 15, 2006. Plaintiff signed a document acknowledging that she was aware that failure to repay the Home Equity Note could result in foreclosure on the Property.

---

[1] The Court takes judicial notice of documents that are not subject to reasonable dispute and are in the public record, pursuant to Fed. R. Evid. 201. Consideration of these documents is appropriate at the summary judgment stage. See Branch v. Tunnell, 14 F3d 449, 454 (9th Cir. 1994).

Bartholomew used the proceeds of the Home Equity Loan to reimburse to Plaintiff the $40,000 she had contributed toward the down payment on the Property. Bartholomew sought and obtained modifications of the Note in 2007 and 2008, each time affirming that he had "no defenses, offsets, or counterclaims" to the amounts owed under the Note and Loan and reaffirming the validity of the documents and obligations associated with the Note and Loan.

On September 25, 2008 Washington Mutual Bank failed and the Federal Deposit Insurance Corporation ("FDIC") took over as receiver. Defendant Chase acquired certain assets and liabilities of Washington Mutual Bank and obtained the rights Washington Mutual Bank had as lender and beneficiary under the Note and Deed of Trust.

In 2009 Plaintiff notified Defendant Chase that she intended to divorce her husband and acknowledged that the title of the home and the Loan and Note were in her husband's name. Plaintiff stated that the mortgage had been paid using community funds and threatened to challenge any attempt to execute a deed in lieu of foreclosure. Bartholomew sought further modifications in March and July of 2009. However, Bartholomew did not consummate a modification with Defendants.

Plaintiff and Bartholomew divorced in August, 2009. The Decree of Divorce awarded the Property to Plaintiff, but made no provision assigning responsibility for payments on the Note. On December 1, 2009 Defendant California Reconveyance Company ("CRC") provided notice to Bartholomew and Plaintiff of default on the Note. On April 7, 2010 Defendant CRC recorded a Notice of Trustee's Sale, mailed the notice to Plaintiff and later posted the notice on the Property. Bartholomew sought another loan modification from Defendant Chase. However, no loan modification was executed. On April 23, 2010, after notice of the foreclosure sale had already been given, Plaintiff recorded a Quitclaim Deed conveying Bartholomew's interest in the Property to Plaintiff as sole and separate property. The Property was sold at a trustee's sale on May 26, 2010.

Plaintiff filed this action in Nevada's Eighth Judicial District Court about July 22, 2010, alleging claims for fraud, breach of contract, and mail, telephone, and wire fraud. Defendants removed the action to this Court. Plaintiff filed a Motion to Amend (#40) on March 29, 2011.

Defendants did not oppose the Motion. While this Motion was pending, on May 2, 2011 Plaintiff filed a second Motion to Amend (#47). Defendants did not oppose the second Motion and the parties continued discovery. On June 30, 2011 before the Court ruled on the second Motion, but after the parties had engaged in significant discovery, Plaintiff filed her third Motion for Leave to File Third Amended Complaint (#63). Defendants have moved for Summary Judgment on the claims asserted in Plaintiff's Amended Complaint (#47-2).

I. Motions to Amend

The Parties' Proposed Discovery Plan (#42) suggested a proposed discovery cutoff of September 28, 2011 and a deadline of June 30, 2011 to amend the pleadings and add parties. Magistrate Judge Johnston did not accept these dates. Instead, in his April 12, 2011 Scheduling Order (#44) he directed that discovery was to close by July 12, 2011. Local Rule 26-1(e)(2) states:

> Unless the discovery plan otherwise provides and the Court so orders, the date of filing motions to amend the pleadings or to add parties shall be not later than ninety (90) days prior to the close of discovery. The plan should state the calendar dates on which these amendments will fall due

Judge Johnston did not order any variation from the Local Rule in his Scheduling Order. A party seeking to amend the pleadings after the date specified in scheduling order must first show "good cause" for amendment under Fed. R. Civ. P. 16(b), then, if "good cause" is shown, the party must demonstrate that amendment was proper under Rule 15. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992).

Plaintiff filed this action in July of 2010. Plaintiff's Motion, which became ripe after the close of discovery, seeks to add claims against several former Washington Mutual employees. Plaintiff also claims that she hopes to add more defendants. (Motion at 20.) Plaintiff argues that she did not know the proper spelling of the names of the parties she now seeks to add and that additional facts came to light during discovery. This does not constitute a proper showing of good cause. See Johnson at 607-609 (lack of diligence in naming parties does not support finding of good cause). Even if Plaintiff could show good cause, allowing amendment to name additional parties would

4

result in prejudice to the Defendants, prejudice to parties Plaintiff seeks to add, and lead to undue delay of this litigation.[2] See, e.g. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994) (addition of new defendants without prior notice and delay constitutes prejudice).

Accordingly, the Motion for Leave to File Third Amended Complaint is Denied and Plaintiff's unopposed Motion to Amend Complaint (#47) is granted.

## II. Motion for Summary Judgment

### B. Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th

---

[2] Additionally, allowing amendment to add Plaintiff's claims against Washington Mutual Bank and its employees relating to the origination of the loans would be futile. As discussed *infra*, the Court lacks jurisdiction over these claims.

5

Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

C. Claims Against Washington Mutual

On September 25, 2008, the Office of Thrift Supervision closed Washington Mutual Bank and the FDIC was appointed as receiver, succeeding to "all rights, titles, powers and privileges of" the failed institution, with the authority to "take over the assets of and operate" the failed institution with all of the powers thereof pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), specifically 12 U.S.C. §§ 1821(d)(2)(A)(I), 1821(d)(2)(B)(I). Under FIRREA, courts lack subject matter jurisdiction to hear a claim against a defunct bank taken into receivership by the FDIC unless the plaintiff has participated in an administrative claims process. McCarthy v. FDIC, 348 F.3d 1075, 1077-78 (9th Cir.2003); Intercontinental Travel Mktg. v. FDIC, 45 F.3d 1278, 1282 (9th Cir.1994) ("No court has jurisdiction over the claim until the exhaustion of this administrative process"). The FDIC transferred most of Washington Mutual's assets to Defendant Chase. However, pursuant to the Purchase and Assumption Agreement between the entities, the FDIC retained the potential liabilities of Washington Mutual arising from the claims of borrowers. See Gusenkov v. Washington Mut. Bank, FA, 2010 WL 2612349, 2 (N.D.Cal. 2010) (holding that FDIC, not Chase, is the responsible party with respect to claims by borrowers against Washington Mutual); see also Benson v. JPMorgan Chase Bank, N.A. 2010 WL 3168390, 4 (N.D.Cal. 2010).

Defendants argue that as a matter of law, Plaintiff cannot assert claims against Washington Mutual Bank. Plaintiff has not named the FDIC as a party in this case or produced any evidence showing participation in the FDIC's claims process. The Court lacks jurisdiction over claims relating Washington Mutual's origination of the subject loans. Accordingly, summary judgment is granted in favor of Defendants on all claims arising out of the origination of the loans and against Washington Mutual Bank.

### D. Standing

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies." The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). See also City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983)( "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy").

The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest, which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural or hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Lujan, 504 U.S. at 560-61(internal citations omitted; alterations in original). All three elements must exist in order for plaintiff to have standing. See Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771(2000).

"The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan 504 U.S. at 561(citation omitted). Because these elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same

way as any other matter on which the plaintiff bears the burden of proof, i.e. with the manner and degree of evidence required at the successive stages of litigation." Id.

The decree of divorce between Plaintiff and Bartholomew assigned the Property to Plaintiff. However, title to the property was not transferred to Plaintiff and the Property was still subject to the Note and Loan and the Home Equity Note. The Property was finally conveyed to Plaintiff after the Notice of Default on the Note and Loan and Notice of Trustee's Sale. Plaintiff is not a party to the $370,000 Note and Loan which are the basis for the foreclosure. Defendants argue that the Property was transferred to Plaintiff subject to the foreclosure proceedings that were already in progress. According to Defendants, since the foreclosure based on the Note and Loan with Mr. Bartholomew is valid, it does not invade any of Plaintiff's legally protected rights. Plaintiff points to no credible evidence that Defendants lack the authority to foreclose. Plaintiff offers no evidence that the parties ever entered into a valid modification agreement. Instead, Plaintiff argues that Defendants broke a promise to modify her former husband's loan. Plaintiff also argues that she suffered injury since part of the down payment came from her separate property funds. However, Plaintiff testified at her deposition that these funds were returned to her when the couple took out the Home Equity Loan and used to purchase investment property. Since Plaintiff is not a party to the Note and Loan, Plaintiff does not demonstrate standing to challenge the foreclosure. Accordingly, summary judgment is appropriate on all of Plaintiff's claims relating to the loan documents to which she is not a party.

E. Fraud

A plaintiff has the burden of proving each element of fraud claim by clear and convincing evidence. Bulbman, Inc. v. Nev. Bell, 108 Nev. 105, 111 (Nev. 1992). The elements of fraud are

    1. A false representation made by the defendant;
    2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);
    3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;
    4. Plaintiff's justifiable reliance upon the misrepresentation; and
    5. Damage to the plaintiff resulting from such reliance.

8

Id. On summary judgment, a "judge must view the evidence presented through the prism of the substantive evidentiary burden." Anderson, 477 U.S. at 254. Here, Plaintiff must show that a jury could reasonably find evidence of fraud by clear and convincing evidence.

At her deposition, Plaintiff could not identify any false representations by Defendant CRC. As discussed *supra*, the Court lacks jurisdiction over claims arising out of the conduct of Washington Mutual Bank and its employees in connection with the origination of the Loan and Note and Home Equity Note. Specifically, the representations Plaintiff claims were made by Seanna Snow when she was a Washington Mutual employee can only be asserted against the FDIC in compliance with FIRREA. Accordingly, summary judgment is granted in favor of Defendants on all claims of fraud arising from representations made prior to Defendant Chase's acquisition of the assets of Washington Mutual.

Plaintiff claims that Chase employee Trina Blazek advised Plaintiff and Bartholomew that they should stop making loan payments in order to qualify for a hardship modification and that they acted in reliance on this information by ceasing to make full payments. However, Plaintiff's former husband testified that Ms. Blazek only informed them that modification was not available to people who were current on their mortgage and that after this conversation he did not intentionally stop making payments, but "tried to do what I could on the home loan." (#73-1 at 18-19.) Plaintiff's self-serving testimony to the contrary is insufficient to demonstrate clear and convincing evidence from which a jury could find fraud.

Plaintiff's basis for another of her fraud claims relates to purported representations by Defendants' employees regarding the amount of a potential modified payment. According to Plaintiff, she and her husband were told on July 12 and 29, 2009 that the modified payment amount would be $1,951.25. When the modification documents, dated July 30, 2009 arrived in the mail on August 3, 2009, the payment amount listed was $2,358.75. Bartholomew never executed the modification documents. Modifications to deeds of trust or promissory notes are subject to the statute of frauds. See Hampton v. Countrywide Home Loans, Inc., 2011 WL 1792743, at 2 (D.Nev.

1  May 11, 2011). Because the documents involved a real estate transaction that would not be
2  completed in one year, Plaintiff cannot claim to have relied on any purported oral agreement to
3  modify the loan payments. See Miller v. Lewis, 80 Nev. 402, 404, 395 P.2d 386, 387 (Nev.1964)
4  (statute of frauds prevented plaintiff from claiming reasonable reliance in fraud action arising out of
5  oral promise in real estate transaction).
6       The remainder of Plaintiff's claims relate to various interactions with representatives of the
7  Defendants relating to attempted modifications and the status of the foreclosure processes. Plaintiff
8  fails to offer any evidence that the representatives of Defendants knowingly made false statements.
9  Plaintiff argues that her expectations that the foreclosure process would be stopped by a modification
10 was reasonable even though Bartholomew had never entered into a modification and she had
11 received a Notice of Default and Notice of Trustee's Sale. Plaintiff fails to provide evidence that
12 could clearly and convincingly demonstrate fraud by the Defendants. Accordingly, Plaintiff's fraud
13 claims cannot survive summary judgment.
14      <u>F. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing</u>
15      To state a claim for breach of contract in Nevada, a Plaintiff must demonstrate (1) the
16 existence of a valid contract, (2) that plaintiff performed or was excused from performance, (3) that
17 the defendant breached, and (4) that the plaintiff sustained damages. Saini v. Int'l Game Tech., 434
18 F.Supp.2d 913, 919–20 (D.Nev.2006). Under Nevada law, "[e]very contract imposes upon each party
19 a duty of good faith and fair dealing in its performance and execution." A.C. Shaw Constr. v.
20 Washoe County, 105 Nev. 913, 784 P.2d 9 (Nev.1989) (quoting Restatement (Second) of Contracts
21 § 205)
22      Plaintiff cannot demonstrate that she is a party to the Note, Loan, and Deed of Trust which
23 are the basis of the foreclosure at issue in this case. Although Plaintiff was a party to a Home Equity
24 Deed of Trust securing the Home Equity Note, Defendants are not foreclosing on the Property based
25 on that agreement. Instead, Defendants are foreclosing pursuant to the Deed of Trust relating to the
26 Note and Loan that Bartholomew entered when he refinanced in 2008. Plaintiff is not a party to this

agreement and cannot maintain an action for breach of the contract against Defendants based on the foreclosure here. Anes v. Crown Partnership, Inc., 113 Nev. 195, 201 (Nev. 1997) (breach of contract claim precluded where two parties are not in privity of contract). Additionally, Plaintiff has failed to demonstrate any breach by the Defendants, since the Note and Deed of Trust provide for foreclosure in the event of a default. For the same reasons, Plaintiff cannot demonstrate a breach of the covenant of good faith and fair dealing. Accordingly, summary judgment is granted in favor of Defendants on Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims.

### G. Breach of Fiduciary Duty

Under Nevada law, a fiduciary relationship exists when one has the right to expect trust and confidence in the integrity and fidelity of another." See Powers v. United Servs. Auto Ass'n, 114 Nev. 690, 700, 962 P.2d 596, 700 (1998). Courts have repeatedly held that a lender owes no fiduciary duties to a borrower absent exceptional circumstances, such as when a special relationship exists between the two parties. See Yerington Ford, Inc. v. Gen. Motors Acceptance Corp., 359 F. Supp.2d 1075, 1090 (D. Nev. 2004) (stating "the Court is satisfied that the Nevada Supreme Court would hold that an arms-length lender-borrower relationship is not fiduciary in nature, absent exceptional circumstances"), *aff'd in relevant part by* Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865 (9th Cir. 2007).

Plaintiff is not the borrower on the subject Note and Loan and has not provided evidence that any type of special relationship exists between Plaintiff and Defendants. Plaintiff argues that the fact that she is not a borrower on the subject Note and Loan but is a party to the Home Equity Deed of Trust creates a fiduciary relationship between Plaintiff and Defendants. Plaintiff cites no law in support of this proposition and does not provide evidence of any special relationship. Accordingly, summary judgment is granted in favor of the Defendants on Plaintiff's claim for Breach of Fiduciary Duty.

H. Violations of § NRS. 107

The procedure for conducting a trustee's foreclosure sale in Nevada is set forth in NRS 107.080 *et seq*. The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. NRS § 107.080(3). After the notice of default is recorded, the grantor has 35 days or, in the case of owner-occupied housing, up to 5 days before the foreclosure sale, in which to cure the deficiency in payment. Three months after recording the notice of default, a foreclosure sale may be conducted. NRS § 107.080(2)(d). However, the trustee must first give notice of the time and place of the sale. NRS § 107.080(4). At the appointed time and place, a sale is conducted, monies are bid, and a trustee's deed is issued. NRS. § 107.080 *et seq.* requires that parties "substantially comply" with the statute incident to conducting foreclosure sales or the sale will be invalid. See Hampton v. Countrywide Home Loans, Inc., 2011 WL 1792743, 3 (D.Nev. 2011) (finding substantial compliance with N.R.S. § 107.080 *et. seq.* sufficient to dismiss challenge to trustee's sale).

The Complaint alleges various violations of the notice requirements of NRS § 107 *et seq*. Specifically, Plaintiff alleges that Defendants violated (1) NRS § 107.080(4) by failing to properly provide notice of the foreclosure sale; (2) NRS § 107.087 by failing to provide contact information for the person conducting the foreclosure sale; and (3) NRS. § 107.082 by orally rescheduling the sale date.

Plaintiff acknowledges that she received the Notice of Default and the Notice of Sale. The original Notice of Sale was recorded on April 7, 2010 and was mailed to Plaintiff and posted on the Property on April 29, 2010. This Notice provided a sale date of April 26, 2010. However, the sale date was postponed May 26, 2010. NRS § 107.080(4) requires posting notice 20 prior to the actual sale of the property and permits oral postponement. Accordingly, Defendants substantially complied with the NRS § 107.080(4).

The Notice provides contact information in compliance with NRS § 107.087 by providing three telephone numbers and two websites. Plaintiff claims that the representatives at these numbers

1  "would not talk to her about" the sale. Plaintiff was not the borrower on the loan and does not
2  indicate the reasons that the representatives she contacted would not speak with her. Plaintiff does
3  not indicate what information the websites provided. Plaintiff fails to show specific evidence that
4  Defendants failed to substantially comply with the requirement to provide contact information in
5  NRS § 107.087.
6       Finally Plaintiff acknowledges in her opposition that no violation of § N.R.S. 107.082
7  occurred. (Oppo. at 26:7-8.)  Instead, she argues that the postponement of sale is evidence of fraud.
8  Defendants substantially complied with the requirements of NRS § 107 *et seq*. Accordingly,
9  summary judgment is granted in Defendants' favor.
10       K. Violation of NRS § 111.325
11       Plaintiff claims that Defendants were not bona fide purchasers for value based on NRS
12  111.325. This section relates to recording of conveyance of real property which is not at issue here.
13  Accordingly, Plaintiff's claim fails and summary judgment is granted in favor of Defendants.
14       L. Conspiracy, Violations of Unfair and Deceptive Trade Practices Act, Violations of NRS §
15       686A, and Harassment
16       Defendants moved for summary judgment on Plaintiff's claims for conspiracy, unfair and
17  deceptive trade practices, violations of NRS § 686A, and harassment claims. These claims were
18  conclusorily pled and Plaintiff offered no argument in support of them in her Opposition to Motion
19  for Summary Judgment. Local Rule 7-2 provides that failure to provide points and authorities in
20  opposition to a motion constitutes consent to the granting of that motion. Accordingly, summary
21  judgment is granted in favor of Defendants on Plaintiff's claims for conspiracy, unfair and deceptive
22  trade practices, violations of NRS § 686A, and harassment claims.
23  III. Conclusion
24       **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend/Correct Complaint (#40) is
25  **DENIED** as moot.
26

1  **IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint (#47) is
2  **GRANTED**.
3  **IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Third Amended
4  Complaint (#63) is **DENIED**.
5  **IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (#68) is
6  **GRANTED**.
7  DATED this 23rd day of January 2012.

_____
Kent J. Dawson
United States District Judge